```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SAMUEL E. BROWN,                    :
          Plaintiff                 :
      v.                            : Civil Action No. 00-5J
PAUL CROAK, DONALD SHARP, MR.       :
BALLOCK, MR. DROSS, JOHN            :
McCULLOUGH, WILLIAM E. SPECK, J.    :
BARRY JOHNSON, DEAN A. KYLER,       :
HENRY A. TATUM, MARTIN F. HORN,     :
and MELANIE TINSMAN,                :
          Defendants                :
```

Report and Recommendation

Recommendation

Defendants' motion for summary judgment, docket no. 37, is pending. I recommend that it be granted.

Report

While incarcerated at S.C.I. Houtzdale in July 1999, plaintiff was assaulted by fellow inmates in the bathroom near the cafeteria. Plaintiff was trying to use the bathroom as a bathroom: the inmates who assaulted him wanted to use the bathroom as a place to smoke cigarettes. Plaintiff filed a complaint alleging that the defendants, employees of the Pennsylvania Department of Corrections, violated his rights under the Eighth Amendment in two ways: 1) by being deliberately indifferent to the prospect that he would be assaulted, see generally Hamilton v. Leavy, 117 F.3d 742 (3d Cir.1997), and 2) by providing him with inadequate medical attention for the injuries he sustained, see generally Estelle v. Gamble, 429 U.S. 97 (1976). Plaintiff additionally claims 3) that

he received a misconduct in retaliation for filing a grievance. He asserts this states a federal claim for retaliation.

I.

A.

Defendants move for judgment as to plaintiff's failure to protect claim on the grounds that plaintiff failed to exhaust his administrative remedies. Plaintiff has not filed a reply to the defendants' motion. Exhaustion of available administrative remedies is mandatory before an inmate files a federal lawsuit, because the Prison Litigation Reform Act of 1996 amended 42 U.S.C.§ 1997e(a) to state:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion of available remedies by an inmate must take place whether or not the administrative process provides the inmate with the relief he is seeking. Booth v. Churner, 532 U.S. 731 (2001) (addressing Pennsylvania Department of Corrections DC-ADM 804). Failure to exhaust administrative remedies, even ones useless to the prisoner, can constitute procedural default. Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir.2004).

According to the Supreme Court, Congress amended Section 1997e(a)

to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison

2

administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002). The Court of Appeals for the Third Circuit similarly analyzed the amendment as having

three interrelated objectives... (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.

Spruill v. Gillis, supra, 372 F.3d at 230.

    The determination whether a prisoner has exhausted administrative remedies is made by evaluating the prisoner's attempts to comply with the prison's administrative regulations governing inmate grievances. It is not a trial issue, rather it is a preliminary question of law to be determined by the court.

    There is an administrative grievance procedure within the Pennsylvania Department of Corrections, established by DC-ADM 804, which permits an inmate to express complaints "related to a problem encountered during the course of his/her confinement," DC-ADM 804 §IV-I, unless those problems relate to disciplinary procedures (DC-ADM 801), administrative custody (DC-ADM 802), or inmate mail and incoming publications (DC-ADM 803), which are the subject of separate procedures. These administrative regulations are

3

promulgated pursuant to authority conferred by 37 Pa.Code §93.9, which provides:

a) The [Pennsylvania] Department [of Corrections] will maintain an inmate grievance system which will permit any inmate to seek review of problems which the inmate experiences during the course of confinement. The system will provide for review and resolution of inmate grievances at the most decentralized level possible. It will also provide for review of the initial decisionmaking and for possible appeal to the Central Office of the Department. An inmate will not be disciplined for the good faith use of the grievance systems. However, an inmate who submits a grievance for review which is false or malicious may be subject to appropriate disciplinary procedures. Copies of the directive governing grievance procedures will be made available to the inmates.
(b) Inmates may also pursue available remedies in State and Federal court.

As the Pennsylvania courts have construed it,

[t]his procedure anticipates a complaint being filed by the inmate, an investigation by the grievance coordinator, and a written response being sent to the inmate. An appeal is allowed and review is based on the record established at the level where the grievance coordinator conducts the investigation. There is also a final review available which, again, is based on the record made at the first level.

Holloway v. Lehman, 671 A.2d 1179, 1181 (Pa.Cmwlth.1996).

There is no evidence that plaintiff ever filed a grievance concerning the failure to protect claim. Plaintiff filed a grievance dated August 2, 1999, see docket no. 37-3, page 8, alleging that he had received substandard medical care as a result of an "incident in the mens room" on July 15, 1999, and requesting evaluation and treatment by physicians outside the prison. The grievance was assigned number HOU-421-99, investigated, and denied. No part of that grievance raised an issue about the alleged failure

4

of prison officials to protect plaintiff from the assault in the first place. See docket no. 37-3, page 15-17 (Emel Affidavit), see also page 6-7 (Russell Affidavit).

B.

Second, even if plaintiff had properly exhausted the administrative grievance procedure as to his failure to protect claim, the defendants would be entitled to judgment on the merits. Plaintiff admitted at his deposition that he was unaware of any other assault by an inmate on another inmate based on a conflict over use of the bathroom near the cafeteria as a place to smoke cigarettes. Although plaintiff described the use of the bathroom as a place to smoke as an infraction of prison rules that was known and overlooked by prison personnel, he stated that before the assault on him, conflicts "never got to anything physical. It was just people mouthing off to each other, because somebody couldn't get in there..." docket no. 37-3 page 90 (Brown depo. at 65.)

In considering motions for summary judgment on claims that prison officials are liable for assaults by one inmate against another, a plaintiff must show evidence that there was a substantial risk of serious harm from another inmate, that the defendant whose actions are under consideration showed deliberate indifference thereto, and that the defendant's indifference caused the plaintiff's injury. See Hamilton v. Leavy, supra, 117 F.3d at

5

746 (reversing grant of summary judgment for defendants); see also Giroux v. Somerset County, 178 F.3d 28, 32 (1st Cir.1999)(same).

The term deliberate indifference has a specific meaning in Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). While the Farmer standard does not require a defendant to admit his consciousness of the risk of serious harm before liability can be imposed, even gross errors of judgment are not constitutional violations: liability requires a defendant's subjective appreciation of the risk to plaintiff. See id. 511 U.S. at 843 n.8. This is a change from pre-Farmer precedent, e.g. Young v. Quinlan, 960 F.2d 351, 360-61 (3d Cir.1992)("[A] prison official is deliberately indifferent when he knows or should have known of a sufficiently serious danger to an inmate."(my emphasis)), which allowed liability to be imposed on the basis that a prison official did not act reasonably.

In Hamilton v. Leavy, supra, Hamilton, a prisoner with a long history of being assaulted by fellow prisoners because he was perceived as an informant, was attacked at a Delaware prison while in the general population, two months after the

6

multidisciplinary team (MDT) recommended he be placed in protective custody. The district court granted summary judgment on Hamilton's failure to protect claim, and the Court of Appeals for the Third Circuit reversed.

Defendant Lewis, the head of the classification committee (CICC) which was a level above the MDT, had denied Hamilton's request for protective custody, for the stated reason that "there was no evidence of a problem" in the prison. The Court of Appeals for the Third Circuit found that the existence of a material fact on the issue of substantial risk of serious harm was demonstrated by the fact that the MDT had made a not "unwarranted or one-sided" recommendation for protective custody. 117 F.3d at 747.

The Hamilton v. Leavy panel then proceeded to consider the question of deliberate indifference, and concluded there was a material issue of fact as to defendant Lewis' deliberate indifference, because Lewis could be charged with the knowledge of Hamilton's long history of being at risk for assaults as a result of being branded a snitch and nevertheless decided not to place him in protective custody. The panel characterized that as a "decision to consciously disregard that risk." 117 F.3d at 748.

The members of the MDT had been granted summary judgment by the district court on the basis that they had made the recommendation of protective custody (the proper decision, in hindsight) and could not, once that course of action was rejected

7

by the CICC, <u>sua sponte</u>, place Hamilton in protective custody. The circuit reversed on the grounds that the MDT could have taken some "additional steps," despite having its recommendation rejected, such as placing Hamilton in administrative segregation, and that the MDT's failure to do so "could be viewed by a factfinder as the sort of deliberate indifference to inmate safety" that would allow the imposition of liability on the MDT members. 117 F.3d at 749.

Even if <u>Hamilton</u>'s interpretation of <u>Farmer</u> is stretched to its most expansive, plaintiff cannot credibly argue that the knowledge of prison officials that verbal insults were being hurled back and forth by inmates who wanted to use the bathroom permits an inference of fact that these named defendants knew there was a serious risk that physical altercations would break out, much less that these defendants knew that plaintiff was at some heightened risk. The failure to protect claim is insubstantial.

II

Plaintiff did, as mentioned above, did grieve the adequacy of his medical care. He discontinued his administrative appeals of that grievance, but according to plaintiff at his deposition, that discontinuance was at the request of the prison's internal security officers who were investigating the incident. Plaintiff's discontinuance of his grievance does not default this claim, therefore, and the <u>Estelle v. Gamble</u> claim can be addressed on its merits.

8

There is no evidence that plaintiff suffered any injury beyond a cut finger and some bumps and bruises as a result of the assault on him. Deliberate indifference to a prisoner's serious medical needs requires a defendant to know plaintiff needs some attention or medical treatment above and beyond what is provided. Here, the defendants except for Tinsman are all non-medical personnel and would have no reason to be involved in the provision of medical treatment to plaintiff. Tinsman was an administrator, and has set forth the medical treatment provided to plaintiff and the reasons for that treatment. docket no. 37-3 at 10-12, Verification of Melanie Tinsman. Plaintiff provides no evidence (particularly, no expert evidence) which would indicate that further treatment beyond the first aid he was provided was ever necessary, much less that Tinsman knew that further treatment was necessary. At the summary judgment stage, plaintiff cannot rest on allegations, but must actually set forth some evidence showing that there is a genuine issue of fact for trial. Plaintiff has not done so.

### III

Finally, plaintiff alleged that he was given a misconduct by defendant Ballock in retaliation for filing a grievance. It appears that plaintiff received a misconduct from Shelly Jones, not a defendant in this matter, on August 4, 1999, which was dismissed after hearing. docket no. 37-3 at 2-3, Verification of Shelly

Jones. First, plaintiff has apparently sued the wrong defendant. Second, plaintiff did not pursue any administrative remedies as to a claim of retaliation and accordingly has defaulted any claim in this court for the reasons stated above in Section I.A. Third, as I have said before, there is no federal claim for retaliation for filing a grievance because use of a prison grievance system does not in itself implicate any constitutional right. The court of appeals has not issued any precedential opinion on the issue and, even in its non-precedential decisions in which I have dismissed claims on this basis, has avoided analysis of this issue. I restate my analysis in a footnote[1].

---

1. Because of the confusion which results from the mistaken belief that anytime a prison official reacts to an inmate's action constitutional rights are involved, it is important to stress that a constitutional claim of retaliation requires evidence that an inmate: (1) took some action itself protected by the constitution (2) that the defendant took adverse action against the inmate sufficient to deter a person of ordinary firmness from persisting in his conduct, and (3) that there was a causal connection between the plaintiff's protected conduct and the adverse action. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003). Here, plaintiff's claim fails at the first step because an inmate's pursuit of grievances within the Pennsylvania Department of Corrections, not in court, is not activity protected by the constitution. Cf. Rauser v. Horn, 241 F.3d 330, 334 (3d Cir.2001)(refusal to participate in religious activity is protected by First Amendment). The Court of Appeals for the Third Circuit has carefully stated that filing a complaint (or petition for a writ of habeas corpus) in court is activity protected by the First Amendment, retaliation for which can violate the constitution. See Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir.2002) see also Allah v. Seiverling, supra, 229 F.3d at 226. These decisions begin with Milhouse v. Carlson, 652 F.2d 371, 374 (3d Cir.1981), which held that adverse action in retaliation for an inmate's resort to legal process is a violation of the First Amendment. There is no
(continued...)

10

---

(...continued)
precedent holding that the same is true in cases of alleged retaliation for plaintiff's writing to complain to an administrative official or resorting to the prison's grievance system.

There is a reason for this. Unlike a formal legal system which is designed to hear cases and do justice according to law by adjudicating claims of right, a prison grievance system, however many rules it appears to have, is designed primarily and almost exclusively to keep order within prison. There is almost no regulation of its results or lack thereof by constitutional due process, see Griffin v. Vaughn, 112 F.3d 703 (3d Cir.1997)(inmate placed in administrative segregation for 15 months without hearing deprived of no interest protected by Due Process Clause) because the sanctions it metes out are constitutionally insignificant, Sandin v. Conner, supra, and because the evidentiary standard required for decisionmaking is the lowest quantum in law, see Superintendent v. Hill, 472 U.S. 445, 455-56 (1985)("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.")

Complaints within a prison system, whether within a formal grievance system or informal letters outside the chain of command, are complaints to employees of the executive branch, not attempts to gain access to court. (The informality of executive branch procedures and lack of independence of its personnel is why they are not absolutely immune as judges would be, see Cleavinger v. Saxner, 474 U.S. 193 (1985)). The scope of allowable grievances is regulated for purposes quite different from rules about filing complaints in court. Since there is no legal difference between an inmate submitting a grievance to the various levels of the administrative grievance system and complaining directly to the warden, deputy secretary, or secretary of corrections, there is no good reason for holding one activity is protected by the First Amendment and the other is not. Exposing prison officials to suit in federal court for alleged retaliation for using the mechanism erected for adjudicating the grievances of inmates out of court would give prison officials a very real incentive to retain the disciplinary system (immune after Sandin from almost all constitutional scrutiny) but abolish the inmates' ability to grieve their problems.

The Court of Appeals for the Third Circuit in Smith v. Mensinger, supra, 293 F.3d at 653, reached the same result in foreclosing retaliation claims like plaintiff's by another road. In affirming the dismissal of the inmate Smith's claim that he had been denied due process by the issuance of an allegedly fabricated

(continued...)

11

Fourth, if plaintiff had engaged in protected activity, following Mitchell v. Horn it would be necessary to determine whether the defendant's retaliation took a form which would chill a reasonable person from engaging in plaintiff's protected activity. Here, plaintiff was exonerated by the hearing examiner, and no sanction was imposed. Plaintiff can hardly claim that the issuance of the misconduct, in itself, is a violation of the federal constitution. Fifth, the plaintiff must show a causal connection between the protected activity and the retaliation, and even if his conduct were protected, and Jones had been sued, and her conduct had been chilling, Jones professed to be unaware of the fact that plaintiff

---

(...continued)
misconduct designed to retaliate against Smith and to preempt a suit alleging that the guards beat Smith in violation of the Eighth Amendment, the circuit observed:
>  In Milhouse, the inmate alleged that prison officials retaliated against him by fabricating misconduct charges in response to his civil rights suit against the prison officials. We concluded that "[s]uch allegations, if proven at trial, would establish an infringement of Milhouse's first amendment right of access to the courts." Milhouse, 652 F.2d at 374. Although Milhouse also involved an allegation that prison officials fabricated misconduct charges, that case is distinguishable from Smith's because the conduct in Milhouse implicated a constitutional right--the First Amendment right to access to the courts. Smith's purported liberty deprivation, on the other hand, implicates no constitutional right and therefore can not overcome the hurdle erected by the holding in Sandin. See Sandin, 515 U.S. at 486, 115 S.Ct. 2293. Under Sandin, an administrative sentence of disciplinary confinement, by itself, is not sufficient to create a liberty interest, and Smith does not claim that another constitutional right (such as access to the courts) was violated. Accordingly, we hold that the district court correctly dismissed Smith's due process claim.

12

had even filed a grievance.  docket no. 37-3 at 2-3, Verification of Shelly Jones.  Plaintiff submits no evidence or even argument to the contrary.  There is no issue of fact as to the causation element of a retaliation claim, either.

Judgment should be entered for the defendants on all of plaintiff's claims.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 16 November 2005

Keith A. Pesto,
United States Magistrate Judge

cc:
Samuel E. Brown DN-4046
Unit E-A-40
S.C.I. Forest
P.O. Box 945
Marienville, PA 16239

Rodney M. Torbic, Esq.
Attorney General of Pennsylvania
6th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15219